UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JOSEPH MELTON,

        Petitioner,

v.                            Case No. 3:03-cv-618-J-32MCR

JAMES V. CROSBY, JR.,
et al.,

        Respondents.

_____

**ORDER**[1]

**I. Status**

Petitioner Joseph Melton, an inmate of the Florida penal system proceeding *pro se*, initiated this action by filing a Petition for Writ of Habeas Corpus (Doc. #1) pursuant to 28 U.S.C. § 2254 on July 28, 2003. Petitioner challenges a 2002 state court (Nassau County, Florida) judgment of conviction for sale of cocaine on the following grounds: (1) ineffective assistance of counsel for failure to adequately investigate the material facts and evidence, which precluded the challenging of inculpatory evidence by the filing of a pretrial motion to suppress; (2) ineffective assistance of counsel for failure to adequately interview and depose the prosecution's potential key witnesses; (3) ineffective assistance

---

[1] Under the E-Government Act of 2002, this is a written opinion and therefore is available electronically. However, it has been entered only to decide the motion or matter addressed herein and is not intended for official publication or to serve as precedent.

of counsel for failure to investigate and prepare an affirmative defense; and, (4) ineffective assistance of counsel for failure to challenge the implied link between Petitioner and the search of an unrelated house and storage units and the illegal confiscation of unrelated property.

Respondents filed an Answer to Petition for Writ of Habeas Corpus (Doc. #13) (hereinafter Response). They submitted exhibits in support of their Response.[2] Petitioner was instructed on how to properly respond to a motion to dismiss and/or for summary judgment. See Court's Order to Show Cause and Notice to Petitioner (Doc. #10). Petitioner has properly responded to Respondents' Response. See Petitioner's Initial Brief (Doc. #18); Petitioner's Response (Doc. #17). This case is now ripe for review.

## II. Procedural History

Petitioner was arrested for the May 30, 2001, and the June 1, 2001, sale or delivery of cocaine (four counts). Ex. A; Ex. C; Case No. 01-649. In a second case, Petitioner was arrested for the August 10, 2001, sale of cocaine. Ex. B; Ex. D; Case No. 01-648. He was charged by Information in Case No. 01-649 of four counts of sale or delivery of cocaine and by Information in Case No. 01-648 of sale or delivery of cocaine. Ex. E at 7; Ex. F at 7.

---

[2] Respondents' exhibits will be hereinafter referred to as "Ex."

2

On April 4, 2002, and on April 11, 2002, Petitioner entered into written plea agreements. Ex. E; Ex. F. In Case No. 01-649, Petitioner Melton was sentenced to five years of incarceration followed by five years of probation/community control on count one and five years of incarceration followed by five years of probation/community control on count two, to run concurrently to each other and to the sentence in Case No. 01-648. Ex. E at 9-23; see http://www.dc.state.fl.us/ActiveInmates (website for the Florida Department of Corrections). Further, in Case No. 01-648, Petitioner was sentenced to five years of incarceration, to run concurrently to the sentence in Case No. 01-649. Ex. F at 9-18. Separate plea proceedings in Case No. 01-649 and Case No. 01-648 were conducted on April 2, 2002, and April 11, 2002. Ex. G; Ex. H.

Petitioner did not appeal to the appellate court. Response at 2; Ex. A; Ex. B. On December 31, 2002, Petitioner handed his Rule 3.850 motion for post conviction relief to the prison officials for filing in the state court on January 6, 2003. Ex. E at 24; Ex. F at 19. The motion combined both cases and set forth the following claims: (1) ineffective assistance of trial counsel for failure to adequately investigate the material facts and evidence, which precluded the challenging of inculpatory evidence by the filing of a pretrial motion to suppress; (2) ineffective assistance of trial counsel for failure to interview and depose the prosecution's potential key witnesses; (3) ineffective assistance of counsel for

3

failure to investigate a factual defense based on the available evidence, and thus Petitioner believed his only option was to enter a plea since he was not informed that there were available affirmative defenses; and, (4) ineffective assistance of counsel for failure to challenge the implied link between Petitioner and the search of an unrelated house and storage units and the illegal confiscation of unrelated property.  Ex. E at 24-40; Ex. F at 19-35.  On January 10, 2003, the trial court, without conducting an evidentiary hearing, denied relief.  Ex. E at 41; Ex. F at 36.

Petitioner appealed, but did not file a brief.  Ex. I.  On April 11, 2003, the appellate court per curiam affirmed.  Melton v. State, 848 So.2d 312 (Fla. 1st DCA 2003); Ex. J.  Petitioner's motion for rehearing and clarification was denied.  Ex. I; Ex. K. The mandate issued on June 26, 2003.  Ex. L.

Petitioner's Petition (signed and dated in July, 2003, and filed in this Court on July 28, 2003) is timely filed within the one-year period of limitation.  See 28 U.S.C. § 2244(d); Response at 4-5.

### III. EVIDENTIARY HEARING

This Court has carefully reviewed the record and, for the reasons set forth more fully below, concludes Petitioner is not entitled to an evidentiary hearing.  A habeas corpus petitioner is entitled to an evidentiary hearing in federal court if he alleges facts which, if proven, would entitle him to habeas corpus relief.

Smith v. Singletary, 170 F.3d 1051, 1053-54 (11th Cir. 1999) (citation omitted); Cave v. Singletary, 971 F.2d 1513, 1516 (11th Cir. 1992) (citing Townsend v. Sain, 372 U.S. 293 (1963)). Here, the pertinent facts of the case are fully developed in the record before the Court. Smith, 170 F.3d at 1054 (stating that a district court does not need to conduct an evidentiary hearing "if it can be conclusively determined from the record that the petitioner was not denied effective assistance of counsel"). No evidentiary proceedings are required in this Court. High v. Head, 209 F.3d 1257, 1263 (11th Cir. 2000) (citing McCleskey v. Zant, 499 U.S. 467, 494 (1991)), cert. denied, 532 U.S. 909 (2001). The Court can "adequately assess [Petitioner's] claim[s] without further factual development." Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004). Therefore, for the reasons set forth above, an evidentiary hearing will not be conducted by this Court.

## IV.  STANDARD OF REVIEW

On April 24, 1996, the President signed into law the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104-132, 110 Stat. 1214 (hereinafter AEDPA). Since this action was filed after the effective date of AEDPA, the Court will analyze Petitioner's claims under 28 U.S.C. § 2254(d), as amended by AEDPA. Nelson v. Alabama, 292 F.3d 1291, 1294-95 (11th Cir. 2002), cert. denied, 538 U.S. 926 (2003); Fugate v. Head, 261 F.3d 1206, 1215

n.10 (11th Cir. 2001), <u>cert</u>. <u>denied</u>, 535 U.S. 1104 (2002); <u>Wilcox v. Florida Dep't of Corr.</u>, 158 F.3d 1209, 1210 (11th Cir. 1998), <u>cert</u>. <u>denied</u>, 531 U.S. 840 (2000).

The Eleventh Circuit has described the standard of review under AEDPA:

> Title 28 U.S.C. § 2254 governs the authority of the federal courts to consider applications for writs of habeas corpus submitted by state prisoners. Section 2254 was amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104-132, 110 Stat. 1214 (1996), which was effective as of April 24, 1996. AEDPA applies to all petitions filed after its effective date. . . .
>
> AEPDA "places a new constraint on a federal habeas court's power to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court" by establishing a deferential standard for reviewing state court judgments in these cases. <u>Williams v. Taylor</u>, 529 U.S. 362, 412, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000). Subsection (d) of § 2254 provides:
>
> > (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> >
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
> 28 U.S.C. § 2254(d)(1)-(2).
>
> AEDPA also makes clear that substantial deference is to be accorded a state court's findings of fact. Section 2254(e)(1) provides that "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Henderson v. Campbell, 353 F.3d 880, 889-891 (11th Cir. 2003) (footnote omitted), cert. denied, 125 S.Ct. 44 (2004).

Clearly, the new 28 U.S.C. § 2254(d) creates a more deferential standard for federal court review of state court adjudications: "[u]nless a state court decision is directly contrary to Supreme Court case law, we review state court findings of fact and conclusions of law for reasonableness." Van Poyck v. Florida Dep't of Corr., 290 F.3d 1318, 1321 (11th Cir. 2002) (per curiam), cert. denied, 537 U.S. 812 (2002), 537 U.S. 1105 (2003); Mitchell v. Esparza, 540 U.S. 978 (2003) (per curiam) (holding that the Ohio Court of Appeals' decision was not "contrary to" or an "unreasonable application" of clearly established federal law and stressing "the limits imposed on federal habeas review by 28 U.S.C. § 2254(d)").

7

The "contrary to" and "unreasonable application" clauses have independent meaning and provide separate bases for federal habeas review:

> "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 412-13, 120 S.Ct. at 1523 (O'Connor, J., concurring). The "contrary to" clause "suggests that the state court's decision must be substantially different" from the controlling legal precedent. Fugate v. Head, 261 F.3d 1206, 1216 (11th Cir. 2001), cert. denied, --- U.S. ---, 122 S.Ct. 2310, 152 L.Ed.2d 1065 (2002) (quoting Williams, 529 U.S. at 405, 120 S.Ct. at 1519). A state court's decision that applies the correct legal rule would not fit within the "contrary to" clause even if the federal court might have reached a different result relying on the same law. See Williams, 529 U.S. at 404-06, 120 S.Ct. at 1519-20 (O'Connor, J., concurring).

> . . . .

> "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 414, 120 S.Ct. at 1523 (O'Connor, J., concurring). In deciding this issue, the federal court should consider whether the state court's application of the law was objectively unreasonable and should not apply the subjective "all reasonable jurists" standard. Id. at 409-10, 120 S.Ct. at 1521-22. The Supreme Court recently adhered to its pronouncements in Williams, stating that "we stressed in

8

> <u>Williams</u> that an unreasonable application is
> different from an incorrect one." <u>Bell v.</u>
> <u>Cone</u>, 535 U.S. 685, 122 S.Ct. 1843, 1850, 152
> L.Ed.2d 914 (2002).  The Court further noted
> that "a federal habeas court may not issue a
> writ under the unreasonable application clause
> 'simply because that court concludes in its
> independent judgment that the relevant state-
> court decision applied clearly established
> federal law erroneously or incorrectly.'" <u>Id</u>.
> (quoting <u>Williams</u>, 529 U.S. at 411, 120 S.Ct.
> at 1522 (O'Connor, J., concurring)).

<u>Wellington v. Moore</u>, 314 F.3d 1256, 1260-61 (11th Cir. 2002).

The Eleventh Circuit has addressed the application of the "contrary to" clause in reviewing a state court adjudication:

> In applying the "contrary to" prong of
> AEDPA, we have recognized that where no
> Supreme Court precedent is on point, "we
> cannot say that the state court's conclusion
> . . . is contrary to clearly established
> Federal law as determined by the U.S. Supreme
> Court." <u>McIntyre v. Williams</u>, 216 F.3d 1254,
> 1258 (11th Cir. 2000).

<u>Washington v. Crosby</u>, 324 F.3d 1263, 1265 (11th Cir.), <u>cert</u>.
<u>denied</u>, 540 U.S. 965 (2003).

Under 28 U.S.C. § 2254(d)(2), this Court must determine whether the state court's adjudication resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  Furthermore, AEDPA "also directs that a presumption of correctness be afforded factual findings of state courts, which may be rebutted only by clear and convincing evidence.  <u>See id</u>. at § 2254(e)(1).  This presumption of correctness applies equally to factual

9

determinations made by state trial and appellate courts." Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003) (footnote omitted) (citing Sumner v. Mata, 449 U.S. 539, 547 (1981)).

Finally, for a state court's resolution of a claim to be an adjudication on the merits, so that the state court's determination will be entitled to deference for purposes of federal habeas corpus review under AEDPA, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's rationale for such a ruling. Wright v. Sec'y for the Dep't of Corr., 278 F.3d 1245, 1255 (11th Cir. 2002), cert. denied, 538 U.S. 906 (2003). Thus, to the extent that Petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under the new § 2254(d).

## V. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citations omitted). "[H]indsight is discounted by pegging adequacy to 'counsel's perspective at the time' . . . and by giving a 'heavy measure of deference to counsel's judgments.'" Rompilla v. Beard, 125 S.Ct. 2456, 2462 (2005) (citations omitted). If counsel's performance falls "below the line of reasonable practice, there is a further

question about prejudice, that is, whether 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"  Id. at 2467 (citation omitted).

The Eleventh Circuit has captured the essence of an ineffectiveness claim:

> [A] petitioner must show that his lawyer's performance fell below an "objective standard of reasonableness" and that the lawyer's deficient performance prejudiced the petitioner. See Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).  Establishing these two elements is not easy:  "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." Waters v. Thomas, 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc) (quoting Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994)).
>
> For assessing a lawyer's performance, Chandler v. United States, 218 F.3d 1305 (11th Cir. 2000) (en banc) cert. denied, 531 U.S. 1204, 121 S.Ct. 1217, 149 L.Ed.2d 129 (2001), sets out the basic law: "Courts must indulge the strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment." Id. at 1314 (internal marks omitted). . . . Our role in reviewing an ineffective assistance claim is not to "grade" a lawyer's performance; instead, we determine only whether a lawyer's performance was within "the wide range of professionally competent assistance." See Strickland, 104 S.Ct. at 2066.
>
> The inquiry into whether a lawyer has provided effective assistance is an objective one:  a petitioner must establish that no objectively competent lawyer would have taken

11

the action that his lawyer did take.  See
Chandler, 218 F.3d at 1315. . . .

A petitioner's burden of establishing
that his lawyer's deficient performance
prejudiced his case is also high.  "It is not
enough for the [petitioner] to show that the
errors had some conceivable effect on the
outcome of the proceeding.  Virtually every
act or omission of counsel would meet that
test."  Strickland, 104 S.Ct. at 2067.
Instead, a petitioner must establish that a
reasonable probability exists that the outcome
of the case would have been different if his
lawyer had given adequate assistance.  See id.
at 2068.[3]

Van Poyck, 290 F.3d at 1322-23 (footnotes omitted).

In sum, "[w]ithout proof of both deficient performance and

prejudice to the defense, . . . it could not be said that the

sentence or conviction 'resulted from a breakdown in the adversary

process that rendered the result of the proceeding unreliable,' and

the sentence or conviction should stand."  Bell v. Cone, 535 U.S.

685, 695 (2002) (internal citation omitted) (quoting Strickland,

466 U.S. at 687).

In the context of the plea process, the Supreme Court of the

United States stated:

We hold, therefore, that the two-part
Strickland v. Washington test applies to

---

[3] However, "when a defendant raises the unusual claim that
trial counsel, while efficacious in raising an issue, nonetheless
failed to preserve it for appeal, the appropriate prejudice inquiry
asks whether there is a reasonable likelihood of a more favorable
outcome on appeal had the claim been preserved."  Davis v. Sec'y
for the Dep't of Corr., 341 F.3d 1310, 1316 (11th Cir. 2003) (per
curiam) (citation omitted).

12

challenges to guilty pleas based on ineffective assistance of counsel. In the context of guilty pleas, the first half of the Strickland v. Washington test is nothing more than a restatement of the standard of attorney competence already set forth in [prior cases]. The second, or "prejudice," requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

In many guilty plea cases, the "prejudice" inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial. For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial. Similarly, where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the "prejudice" inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial. See, e.g., Evans v. Meyer, 742 F.2d 371, 375 (CA7 1984) ("It is inconceivable to us . . . that [the defendant] would have gone to trial on a defense of intoxication, or that if he had done so he either would have been acquitted or, if convicted, would nevertheless have been given

13

a shorter sentence than he actually
received").

Hill v. Lockhart, 474 U.S. 52, 59 (1985) (footnote omitted).

## VI. Findings of Fact and Conclusions of Law

Respondents contend that some of Petitioner's claims were
raised in state court in his Rule 3.850 motion; however, some of
the claims were presented in a conclusory manner without a factual
basis, and therefore were not fairly presented to the state court.
Response at 6-7, 11.  This Court is of the opinion that Petitioner
has sufficiently presented his claims in state court in his Rule
3.850 motion, and therefore they are properly exhausted.

The trial court adjudicated the ineffectiveness claims on the
merits, and the appellate court per curiam affirmed.  The trial
court, in denying the ineffectiveness claims stated, in pertinent
part:

> This matter came to be considered on
> defendant's Motion for Postconviction Relief,
> and the Court finding that defendant's
> Judgment and Sentences were entered herein
> pursuant to a written Plea of Guilty and
> Negotiated Sentence entered into by the
> defendant freely, willingly and voluntarily,
> and the Court being otherwise fully advised in
> the premises . . . [that] Defendant's motion
> is denied.

Ex. E at 41; Ex. F at 36.

These grounds should be addressed applying the deferential
standard for federal court review of state court adjudications, as

14

required by AEDPA.[4]  Upon a thorough review of the record and the applicable law, it is clear that Petitioner is not entitled to relief on the basis of these claims because the state courts' adjudications of the claims were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

The following facts are relevant to Petitioner's ineffectiveness claims that are now before this Court.  On April 2, 2002, a plea proceeding was conducted in Case No. 01-649.[5]  Defense counsel, at the plea proceeding, stated:

> Your Honor, Mr. Melton has authorized me to
> withdraw his previous plea of not guilty and
> enter a plea of guilty to Counts I and II.
> He'd be adjudicated guilty on those two
> counts, be sentenced to a concurrent

---

[4] Respondents point out that the trial judge, in ruling on the ineffectiveness claims, did not "reference" the Strickland test (Response at 13); however, this Court concludes that these grounds should be addressed applying the deferential standard for federal court review of state court adjudications.  It is noteworthy that the appellate court per curiam affirmed the trial court's ruling. For a state court's resolution of a claim to be an adjudication on the merits, so that the state court's determination will be entitled to deference for purposes of federal habeas corpus review under AEDPA, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's rationale for such a ruling.  Wright v. Sec'y for the Dep't of Corr., 278 F.3d at 1255.

[5] In Case No. 01-649, Petitioner was charged with four counts of sale or delivery of cocaine occurring between May 30, 2001, and June 1, 2001.  Ex. E at 7, Information, dated August 31, 2001.

> disposition of five years Florida state
> prison, followed by five years probation. The
> only special condition of his probation is he
> pay two sets of court costs of -- I think it's
> 752 when I added them together. And Mr.
> Melton does agree, Judge, to waive his
> interest in the seized property, but obviously
> does not speak for his mother on [sic] any
> other people making claims to it.

Ex. G at 5.

At the plea hearing, Petitioner affirmed that he can read and understand the English language, had read the two-sided Plea of Guilty and Negotiated Sentence form and had sufficient time to discuss the matter with his lawyer. Id. at 6. He stated that his lawyer had explained the plea form to him, including the possible defenses and the implications of the plea. Id. at 6-7. Petitioner was fully satisfied with his lawyer's representation. Id. at 7. Petitioner understood that, by entering the plea, he would give up certain rights such as the right to a trial, the right to call witnesses, the right to examine and cross-examine witnesses and the right to remain silent. Id. Petitioner agreed that, other than the representations that his lawyer made to him and those contained in the written plea form, no one had promised him anything in order to get him to plead guilty. Id. Petitioner confirmed that no one had threatened him or coerced him and that he was entering the plea because he was, in fact, guilty. Id. at 8. He stated that he was entering the plea freely, willingly and voluntarily and was not

under the influence of drugs, alcohol or medication during the plea proceedings.   Id.

The trial judge found that, based on the Affidavit for Arrest Warrant,[6] there was a sufficient factual basis to support the plea. Id.  Defense counsel stipulated to the factual basis to support the plea.   Id.   Therefore, the trial judge found that the plea was entered freely, willingly and voluntarily.   Id.   The trial judge sentenced Petitioner, on counts one and two, to five years in the Florida state prison system, followed by five years of probation, to run concurrently to each other, and directed Petitioner Melton to forfeit any interest he may have in the property that was taken as a result of these incidents.   Id. at 9.   The State nol prosed counts three and four.   Id.

On April 11, 2002, a plea proceeding was conducted in Case No. 01-648.[7]  Petitioner affirmed that he had read the two-sided Plea of Guilty and Negotiated Sentence form and had sufficient time to

---

[6] In the Affidavit for Arrest Warrant, the affiant stated that he had worked for the Nassau County Sheriff's Office for approximately six years and was a member of the D.E.E.T. Task Force.  Ex. C, Affidavit for Arrest Warrant, dated July 26, 2001. He stated that, on or between May 30, 2001, and June 1, 2001, members of the D.E.E.T. Task Force conducted four controlled purchases of crack cocaine from Petitioner Joseph Gregory Melton, utilizing a confidential informant.  Id.  All the drug buys were made on North Oxford Street in Hilliard, Nassau County, Florida, and were recorded on video and/or audio.  Id.

[7] In Case No. 01-648, Petitioner was charged with the August 10, 2001, sale or delivery of cocaine.  Ex. F at 7, Information, dated September 6, 2001.

discuss the matter with his lawyer. Ex. H at 4-5. He stated that his lawyer had explained the plea form to him and that he was fully satisfied with his lawyer's representation. Id. at 5. Petitioner understood that, by entering the plea, he would give up certain rights. Id. Petitioner agreed that, other than the representations that his lawyer made to him and those contained in the written plea form, no one had promised him anything in order to get him to plead guilty. Id. Petitioner confirmed that no one had threatened him or coerced him and that he was entering the plea because he was, in fact, guilty. Id. at 6. He stated that he was entering the plea freely, willingly and voluntarily and that he was not under the influence of drugs, alcohol or medication during the plea proceedings. Id.

The trial judge found that, based on the Affidavit for Arrest Warrant[8], there was a sufficient factual basis to support the plea. Id. Defense counsel stipulated to the factual basis to support the plea. Id. The trial judge found that the plea was entered freely, willingly and voluntarily. Id. The trial judge sentenced him to five years in the Florida state prison system, to run concurrently

---

[8] In the Affidavit for Arrest Warrant, the affiant stated that, as a Nassau County Narcotics Detective, he was involved in a drug investigation. Ex. D, Affidavit for Arrest Warrant, dated August 14, 2001. He explained that, using a confidential informant, Petitioner Melton exchanged $20.00 for a yellow rock substance that field tested positive for cocaine. Id. He noted that the transaction was videotaped and that Petitioner was personally known to the confidential informant and positively identified by a photo spread. Id.

to the sentence in Case No. 01-649.  <u>Id</u>. at 7.  Petitioner agreed to forfeit his right to all property that was seized in both cases. <u>Id</u>.

As ground one, Petitioner claims that counsel was ineffective for failure to adequately investigate the material facts and evidence, which precluded the challenging of inculpatory evidence by the filing of a pretrial motion to suppress.  Petition at 5. Specifically, he alleges that counsel was deficient for failing to demand to independently test the evidence (the cocaine in Case No. 01-649) or "to have the results of an F.D.L.E. lab test done by the police department."  <u>Id</u>. at 5A.  Further, as ground two, Petitioner claims that counsel was ineffective for failure to interview and depose the prosecution's potential key witnesses.  <u>Id</u>. at 6. Specifically, Petitioner alleges that defense counsel failed to interview and depose Detective Bryan Turner[9], the confidential informant and the Sheriff's Office deputies involved in the arrest and merely relied on Detective Turner's report and affidavits.  <u>Id</u>. at 6A.

---

[9] Detective Bryan Turner was the affiant in the Affidavits for Arrest Warrants in Case Nos. 01-648 and 01-649.  Ex. C; Ex D. According to the Affidavits, Detective Turner, as of the date of the Affidavits, had worked for the Nassau County Sheriff's Office for six years, was a member of the D.E.E.T. Task Force and a narcotics detective.  <u>Id</u>.  The members of the task force conducted the controlled purchases of crack cocaine from Petitioner utilizing a confidential informant.  Ex. C.  Detective Turner was also the arresting officer.  Ex. C; Ex. D.

In evaluating the performance prong of the Strickland ineffectiveness inquiry, there is a strong presumption in favor of competence. Petitioner must establish that no competent attorney would have taken the action that counsel, here, chose. United States v. Freixas, 332 F.3d 1314, 1319-20 (11th Cir. 2003) (citations omitted). "As a corollary, the appropriate standard for evaluating counsel's pretrial investigation is 'reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.'" Stano v. Dugger, 921 F.2d 1125, 1149 (11th Cir.) (citation omitted), cert. denied, 502 U.S. 835 (1991).

In Case No. 01-649, on August 31, 2001, Petitioner was charged with four counts of sale or delivery of cocaine between May 30, 2001, and June 1, 2001. Ex. A, Trial Docket Index; Ex. E at 7, Information. Further, in Case No. 01-648, on September 6, 2001, Petitioner was charged with one count of sale or delivery of cocaine on August 10, 2001. Ex. B, Trial Docket Index; Ex. F at 7, Information. Petitioner's claims that defense counsel's performance was deficient for failure to adequately investigate the material facts and for failure to interview and depose the prosecution's potential key witnesses is unfounded. As noted by Respondents, the State's Discovery Exhibit and Demand for Reciprocal Discovery, dated September 6, 2001, in Case No. 01-649, listed cocaine as an item in the State's possession and noted that the defense could inspect, copy, test or photograph the items. Ex.

M, State's Discovery Exhibit and Demand for Reciprocal Discovery. However, it was clear that the substance sold by Petitioner had tested positive for cocaine.  Ex. D; Ex. M.  Further, the drug transactions were videotaped and/or audio taped.  Ex. C; Ex. D; Ex. M.  And, the State, in their discovery exhibit in Case No. 01-649, listed four videos.  Ex. M.  Defense counsel, through the videotapes and/or audiotapes, could see and/or hear for himself the drug transactions.  Further, as noted by the trial judge at the plea proceedings, the Affidavits for Arrest Warrants in both cases, provided sufficient facts upon which to base the arrest warrants and upon which to conclude that there was a sufficient factual basis for each guilty plea.  Ex. C; Ex. D; Ex. G at 8; Ex. H at 6. Further, defense counsel, knowing that facts existed for the offenses, stipulated to the factual basis for each guilty plea. Ex. G at 8; Ex. H at 6.  And, finally, Petitioner was personally known to the confidential informant and was positively identified by a photo spread.  Ex. D.

As ground three, Petitioner claims that counsel was ineffective for failure to investigate and prepare an "affirmative defense."  Petition at 8.  As previously noted, the record reflects that defense counsel was aware of the facts underlying the offenses and that he was sufficiently prepared to discuss the matters with Petitioner and inform him of his options.  At the plea hearing, Petitioner affirmed that defense counsel had discussed the cases

with him and had explained the possible defenses that were available to him if he proceeded to trial. Ex. G at 6-7; Ex. H at 4-5.

Finally, as ground four, Petitioner claims counsel was ineffective for failure to challenge the State's implied link between Petitioner and the search of an unrelated house and storage units and the illegal confiscation of unrelated property. Petition at 9. Specifically, Petitioner alleges that Detective Turner acquired search and seizure warrants on totally unrelated properties of uninvolved persons, seized a significant amount of their property and claimed the property belonged to Petitioner Melton. Id. at 9A. The plea proceeding transcripts suggest that a separate civil forfeiture proceeding may have been ongoing. The performance of counsel in a civil forfeiture proceeding does not implicate the Sixth Amendment. See United States v. 817 N.E. 29th Drive, 175 F.3d 1304, 1311 n.14 (11th Cir. 1999), cert. denied, 528 U.S. 1083 (2000). Moreover, to the extent that Petitioner is challenging the forfeiture of his property, that claim is not cognizable under 28 U.S.C. § 2254. At the plea proceedings, Petitioner agreed to forfeit any interest he may have had in the seized property taken as a result of the drug offenses. Ex. G at 4, 5, 9; Ex. H at 7. The record reflects that a factual basis existed for each guilty plea and that Petitioner freely, voluntarily and willingly entered the pleas because he was in fact

guilty of the drug offenses.  And, finally, Petitioner does not have standing to raise claims concerning other persons.

Even assuming *arguendo* deficient performance by defense counsel, Petitioner has not shown prejudice.  Petitioner has not shown that a reasonable probability exists that the outcome of the case would have been different if his lawyer had given the assistance that Petitioner has alleged he should have provided.  As previously noted, the drug transactions were video taped and/or audio taped, and they were "controlled" purchases (conducted by members of the D.E.E.T. Task Force of the Nassau County Sheriff's Office, utilizing a confidential informant) of crack cocaine.  In Case No. 01-648, Petitioner was personally known to the confidential informant and positively identified by a photo spread.  As reflected at the plea hearings, Petitioner was satisfied with the representation of counsel and entered into the guilty pleas because he was, in fact, guilty.  Ex. G at 7-8; Ex. H at 5-6.

Petitioner Melton engaged in multiple sales of cocaine, and each sale of cocaine was a second degree felony punishable by up to fifteen years of incarceration.  Ex. E at 3-4, Criminal Punishment Code Scoresheet; Ex. F at 3-4.  Further, each offense was an independent crime, and therefore Petitioner faced possible consecutive sentences if he had gone to trial and had been convicted.  As a result of the plea process, the State nol prosed counts three and four in Case No. 01-649, and Petitioner was

23

sentenced to concurrent terms of five years of incarceration followed by five years of probation/community control.  Ex. E at 9-23; Ex. F at 9-18.  As of the date of this Order, Petitioner Melton's current estimated release date is in 2006.  see http://www.dc.state.fl.us/ActiveInmates (website for the Florida Department of Corrections).  Therefore, Petitioner most likely will serve less than five years of incarceration within the Florida state prison system for the drug offenses.[10]  Here, Petitioner Melton has not shown that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. Hill v. Lockhart, 474 U.S. at 59.

## VII. Conclusion

Any other claims not specifically addressed are found to be without merit.  Accordingly, for all of the above-stated reasons, the Petition will be denied and this case will be dismissed with prejudice.

---

[10] Petitioner was arrested on or about August 17, 2001.  Ex. C; Ex. D.  As reflected on the Florida Department of Corrections' website, Petitioner was taken into the Department's custody on May 3, 2002, and it is estimated that he will be released July 8, 2006.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.   The Petition (Doc. #1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE.**

2.   The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.   The Clerk of the Court shall close this case.

**DONE AND ORDERED** at Jacksonville, Florida, this 12th day of December, 2005.


TIMOTHY J. CORRIGAN
United States District Judge


sc 11/25
c:
Joseph Melton
Ass't Attorney General (Hill)